```
          IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MARYLAND

                                  :
JOHN F. REUTEMANN, JR., et al.
                                  :

     v.                           :  Civil Action No. DKC 2004-0063

                                  :
LEWIS AQUATECH INCORPORATED
                                  :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this contract dispute is the motion of Defendant Lewis Aquatech, Inc., for summary judgment pursuant to Fed.R.Civ.P. 56. The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the court grants in part and denies in part Defendant's motion.

**I.   Background**

The following facts are undisputed. In the spring of 2000, Plaintiffs John F. Reutemann, Jr. and Antoinette R. Reutemann began negotiations with Defendant Lewis Aquatech, Inc., for a contract to construct a swimming pool with integrated electric cover at Plaintiffs' home. Plaintiffs met Defendant's sales manager, Richard DeCelle, multiple times to discuss the design of the pool. Plaintiffs assert that Mr. DeCelle acknowledged that they wanted a rectangular pool that was positioned

perpendicular to the house.  Mr. DeCelle submitted to Plaintiffs a drawing, labeled "Conceptual Pool Design for Jack Reutemann," depicting the placement of the pool on Plaintiffs' property.  On April 4, 2000, a contract was signed, and Plaintiffs attached the drawing to the contract.

After construction was completed, it became apparent that the pool was neither perpendicular to the house nor exactly rectangular.  Plaintiffs complain that the pool is "visibly askew and detracts from the overall appearance of the Plaintiffs' home;" and that the construction of the pool, and other defects in the design and construction of various other components of the pool system, have "detract[ed] from Plaintiffs' enjoyment of their home and result[ed] in a significant diminution of the value of the Plaintiffs' property;" that the electric pool cover "does not operate properly and frequently becomes derailed from its track;" and that Plaintiffs have incurred a variety of repair and reconstruction expenses associated with these construction defects.  Plaintiffs also claim that they were overcharged $4,500 for installation of the natural gas line used to heat the pool.

While not explicit in the complaint, Plaintiffs appear to assert claims for breach of contract and negligent construction.

Plaintiffs request $285,000 to remove and replace the pool and reconstruct the adjacent pool deck and landscaping; $4,500 for the gas line overcharge; and attorney's fees and costs. Discovery is complete. Defendant now moves for summary judgment.

## II.  Standard of Review

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1987).  The moving party bears the burden of showing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(c); *Catawba Indian Tribe of South Carolina v. State of S.C.*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *See U.S. v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256; *Celotex Corp.*, 477 U.S. at 324. However, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir.), *cert. denied*, 522 U.S. 810 (1997). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

**III. Analysis**

    **A.**    **Negligence**

Plaintiffs cannot sustain a tort claim in this case. "[T]here is no recovery under a negligence theory for purely economic losses, unless the defect causes a dangerous condition creating a risk of death or personal injury." *A.J. Decoster Co. v. Westinghouse Elec. Corp.*, 634 A.2d 1330, 1333 (Md. 1994) (citing *Council of Co-owners Atlantis Condominium, Inc. v. Whiting Turner Contracting Co.*, 517 A.2d 336, 344-35 (Md. 1986)). Here, Plaintiffs assert only economic losses because the pool was not constructed according to their wishes. Because Plaintiffs do not allege any physical danger, the court will grant summary judgment on this claim.

    **B.**    **Breach of Contract**

Plaintiffs claim three breaches of their contract with Defendant: They state that they specifically required that the pool be both perpendicular to their house and rectangular as part of an overall property design, but that Defendant constructed a pool that was neither; and that they were overcharged $4,500 by the subcontractor chosen by Defendant to install the gas line. The gas line claim is not challenged in Defendant's motion, so the court confines its analysis to the issues surrounding the shape and position of the pool.

Defendant admits that the contract indicates that the pool was to be rectangular in shape, and does not dispute Plaintiffs' averment that "Defendant and counsel have met with Plaintiffs and counsel to take measurements of the swimming pool . . . and conceded that such pool is not an absolute rectangle." Paper no. 30, at 1. Defendants appear to argue that with respect to shape, the pool is "close enough" to rectangular, but "[w]hether a breach is material is a question of fact." *Agra, Gill & Duffus, Inc. v. Benson,* 920 F.2d 1173, 1176 (4th Cir. 1990) (citing 2 E. Farnsworth, Contracts § 8.16 (1990)). This question is therefore for a jury to decide.

Defendant admits that the pool is not perfectly perpendicular to the house, but contends that the contract contains no such requirement. Plaintiffs argue that their conversations and walk-throughs with Mr. DeCelle, in which Mr. DeCelle allegedly acknowledged and agreed to Plaintiffs' desire that the pool be perpendicular to the house, and Mr. DeCelle's drawing depicting the pool as perpendicular to the house, constitute part of the agreement.

"An integrated agreement is a writing or writings constituting a final expression of one or more terms of an agreement." Restatement (Second) of Contracts § 209(1) (1981).

6

"Where the parties reduce an agreement to a writing which in view of its completeness and specificity reasonably appears to be a complete agreement, it is taken to be an integrated agreement unless it is established by other evidence that the writing did not constitute a final expression." *Id.* § 209(3). An integrated agreement is "completely integrated" if it is adopted as the "complete and exclusive statement of the terms of the agreement," *id.* § 210(1); otherwise it is "partially integrated," *id.* § 210(2). Whether an agreement integrated, and whether it is completely or partially integrated, are preliminary questions determined by the court. *Id.* §§ 209(2), 210(3). "The essential question is whether the parties intended their writing to be the final or complete expression of their agreement." 1-5 Murray on Contracts § 81 (Lexis 2001).

If an agreement is completely integrated, "parol evidence of a prior agreement within the scope of the integrated agreement may not be considered by the trier of fact. *See id.* §§ 213(2), 216. However, parol evidence is admissible to explain what the parties meant to express when using an ambiguous term in an integrated agreement. *See id.* § 214(c) & cmt. b., illus. 2." *Alamria v. Telcor Int'l,* 920 F.Supp. 658, 673 (D.Md. 1996); *Helferstay v. Creamer,* 473 A.2d 47, 52 (Md.Ct.Spec.App. 1984), *cert. denied,* 481 A.2d 239 (Md. 1984)

7

("[P]arol evidence may not be admitted to vary, explain or contradict the written contract but this rule does not preclude the admission of parol evidence to explain an ambiguous term.").

Here, the contract is a form contract, filled out and signed by the parties. The form does not contain a merger clause that might lend credence to Defendant's assertion that the contract is completely integrated. Nothing in the contract language indicates whether the pool should be perpendicular to the house, or indeed makes any reference to the location of the pool on the property. The concept drawing, which, Plaintiffs note, was attached to the contract, depicts the position of the pool and could reasonably be interpreted to imply perpendicularity, but does not specify any measurements. The contract is therefore clearly ambiguous as to the position of the pool and whether perpendicularity was understood to be a term of the agreement. Because, viewing the facts in the light most favorable to Plaintiffs, the parties discussed the position and perpendicularity of the pool at length prior to signing the agreement, and because the agreement does not refer to these issues at all, the court finds that "the printed form contract executed by the parties was not intended to integrate and supersede all of the negotiations, representations and agreements between the parties . . . ." *A & A Discount Ctr.,*

*Inc. v. Sawyer,* 219 S.E.2d 532 (N.C.Ct.App. 1975) (form contract not completely integrated where contract did not warrant commercial use of swimming pool in accordance with local regulation, but salesman told consumers pool was suited for commercial use).

**C.  Damages**

Defendant argues alternatively that, even if Defendant is found to have breached the contract, Plaintiffs' claim is barred by the doctrine of economic waste, and that because Plaintiffs have not shown any diminution in the value of their property, they cannot recover.  The court disagrees.

The Maryland Court of Appeals addressed the doctrine of economic waste in *Andrulis v. Levin Constr. Corp.,* 628 A.2d 197 (Md. 1993).  The Court explained:

> Sometimes the defects in a structure cannot be physically remedied without tearing down and rebuilding.  In many such cases, the structure as it exists, even though it is not exactly in accordance with the contract requirements, is such that it will render substantially all the service that the structure contracted for would have rendered; and reconstruction and completion in accordance with the contract may be possible only at a cost that would be imprudent and unreasonable.  The law does not require damages to be measured by a method involving such economic waste.
>
> A. Corbin, *Corbin on Contracts* § 1089, at 485-87 (1964) (footnote omitted).  If economic waste would

> result by repair, the proper measure of damages is "the difference between the market value that the structure contracted for would have had and that of the imperfect structure received by the plaintiff." *Id.* § 1090, at 493.
>
> One of the caveats Corbin places on this rule is that it is the burden of the breaching contractor to prove, "affirmatively and convincingly," that the repairs would result in unreasonable economic waste; otherwise, the cost of repair should be the measure of damages. *Id.* § 1089, at 488. "Any reasonable doubt as to whether curing defects would cause such economic waste should be resolved against the contractor guilty of the breach . . . ." *Id.* § 1089, at 492.

*Andrulis,* 628 A.2d at 205-06. In *Andrulis*, homeowners sued the builder of their home for breach of the builder's construction contract, alleging that a foundation drainage system was required, but was in part not installed and in part improperly installed. The trial court found that argument credible, and decided that, because very little actual damage had thus far been caused to the house as a result of the breach, the diminution in value of the home due to the breach was half the cost of the repair, as estimated by the plaintiffs' expert.

The Court of Appeals disagreed with that methodology:

> Here, where we deal with improvements to real estate, in order to demonstrate that the cost of cure mounts up to economic waste, considerable weight must be given to any difference between the value of the property after the corrective work is done with the value of the property absent the corrective work. That difference is then compared to the cost of cure. These before and after values of the property are

> figures that we do not know, and therein lies the error committed by the trial court. . . .
>
> The trial court sought to supply the missing evidence of values by substituting the reaction of a hypothetical buyer, armed in negotiations with the knowledge that the foundation drainage system is defective. That substitution constituted speculation. Nor should we assume that the Contract price represents the value of the premises, as warranted, and that the Contract price, less the cost of a drainage system as estimated by Thomas, represents the value of the premises without a drainage system. It may be that the value of the Andrulises' house, without a drainage system, is depressed by more than the cost of the corrective work. It may be that buyers of this class of property in Montgomery County would prefer to purchase a code-complying house, rather than to endure the aggravation of having the corrective work done. There is no evidence on these points.

*Id.* at 207. The Court cited with approval *Stangl v. Todd,* 554 P.2d 1316 (Utah 1976) for the proposition that "the breaching contractor bears the burden of proving, 'affirmatively and convincingly,' that completion would result in economic waste." *Id.* at 1320. The Court then concluded: "We hold that the burden of proving economic waste is on the party that breached the contract and that invokes the doctrine in an effort to limit expectation interest damages." *Andrulis,* 628 A.2d at 208 (citations omitted).

Here, as in *Stangl*, "the breaching contractor in this case failed to demonstrate unreasonable economic waste by its failure to present evidence necessary to take the market value

approach." *Stangl,* 554 P.2d at 1320. Defendant has failed -- and, indeed, strenuously notes Plaintiffs' parallel failure -- to present any evidence of the fair market value of the property either with or without the disputed defects. Defendant has merely asserted baldly that "[t]here could not be a clearer case of economic waste" because the pool is "fully functional." Paper no. 27, at 11. This, alone, does not constitute "affirmative[] and convincing[]" evidence. Perhaps the condition of the property is such that future buyers will discount its value by more than the $285,000 estimated cost to demolish and rebuild the pool and surrounding features; perhaps not. Lacking any evidence, the court cannot say. Defendant has failed to carry its burden to show economic waste, and therefore has failed to show that Plaintiffs cannot prove damages. Accordingly, summary judgment will be denied as to the breach of contract claim.

## IV. Conclusion

For the stated reasons, the court will grant Defendant's motion as to Plaintiffs' negligence claim, but deny the motion as to the breach of contract claim. A separate Order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge

July 5, 2005